LAW LIBRARY

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 29307

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
CHRISTOPHER GRINDLING, Defendant-Appellant

K. HAMAKADO
CLERK, APPELLATE COURTS
STATE OF HAWAI'I

2010 MAR 19 AM 8:03

FILED

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 07-1-0533(2))

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Christopher Grindling (Grindling) appeals from the Judgment, Conviction and Sentence filed on November 6, 2008 in the Circuit Court of the Second Circuit (circuit court).[1]  After a jury trial, the circuit court convicted Grindling of Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1243(1) (Supp. 2009)[2] (Count One) and Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993) (Count Two).  The circuit court sentenced Grindling to five years of imprisonment for each count, the terms to run consecutively.

On appeal, Grindling contends:

(1)  The circuit court erred by granting the November 2, 2007 Motion for Mental Examination filed by the State of Hawai'i (State).

(2)  The circuit court erred and improperly denied him his constitutional rights to counsel and to self-representation when the court denied his motions for substitute counsel.

(a)  With regard to the court's discharge of Grindling's second court-appointed counsel, Cary Virtue (Virtue), the circuit court erroneously

---

[1]  The Honorable Shackley F. Raffetto presided.

[2]  The Felony Information misstates the HRS provision as "HRS § 2-1243(1)."

(i) refused to consider the conflict between Grindling and Virtue, when Grindling first raised the issue on November 8, 2007 and on numerous subsequent occasions;

(ii) found that Grindling had elected to represent himself based on his conduct, even though he clearly stated numerous times that he did not wish to do so; and

(iii) allowed Grindling to waive his right to counsel, even though the waiver was equivocal at best.

(b) With regard to the court's discharge of Grindling's third court-appointed counsel, Steven B. Songstad (Songstad), the court failed to clearly advise Grindling before he waived his right to counsel of the dangers of self-representation, his right to counsel, and his right to waive his right to counsel.

(3) The circuit court abused its discretion by denying his February 7, 2008 Motion to Quash (Motion to Quash); February 12, 2008 Motion to Suppress (2/12/08 Motion to Suppress); March 24, 2008 Motion to Compel/Motion to Suppress (referred to separately as 3/24/08 Motion to Compel and 3/24/08 Motion to Suppress); and March 24, 2008 Supplement to 3/24/08 Motion to Suppress (Supplement to 3/24/08 Motion to Suppress). The 2/12/08 Motion to Suppress, 3/24/08 Motion to Suppress, and Supplement to 3/24/08 Motion to Suppress will be referred to collectively as Motions to Suppress.

(4) The circuit court erred in failing to compel the State to reveal the identity of its confidential informant (CI) because "[p]rior to ruling on privilege[,] court must at the minimum receive an affidavit avering [sic] [CI] wasn't present at the raid."

(5) The circuit court abused its discretion by denying his February 21, 2008 Motion to Compel (2/21/08 Motion to Compel), 3/24/08 Motion to Compel, and a second Motion to Compel filed on March 24, 3008 (Second 3/24/08 Motion to Compel) (collectively, Motions to Compel).

2

(6) The circuit court erred by not finding that the State lost or destroyed Grindling's cell phone records.

(7) The circuit court erred by failing to obtain on the record his waiver of his right to testify.

(8) The circuit court abused its discretion by denying his oral motion for mistrial without first inquiring into his allegation that the jury had been exposed to extrinsic evidence.

(9) The circuit court erred by denying his oral Motion for Judgment of Acquittal (JOA Motion) because there was insufficient evidence of constructive possession.

(10) The circuit court plainly and manifestly abused its discretion by denying him a term of probation and, instead, imposing upon him consecutive sentences of imprisonment.

(11) The circuit court erred by denying his November 6, 2008 Amended Petition for D.N.A. Test (Petition for DNA Test), in which Grindling sought post-conviction DNA testing of the glass pipe recovered from the bedroom floor.

(12) The State committed several errors which amounted to prosecutorial misconduct.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Grindling's points of error as follows:

(1) Based on the letters attached to the State's Motion for Mental Examination, which reveal Grindling's belief that Officer Esperanza, the circuit court, and the circuit court clerk were conspiring against him and in which Grindling accused his attorney of "aiding and abetting" Officer Esperanza in falsifying his search warrant affidavit, the court did not abuse its discretion by granting the Motion for Mental Examination. HRS § 704-404(1) (1993 & Supp. 2007).

(2) The circuit court did not err or deny Grindling his constitutional rights to counsel and to self-representation.

3

(a) With regard to the court's discharge of Virtue,

(i) the court should have held an evidentiary hearing to establish Grindling's objections on the record and to conduct a "penetrating and comprehensive examination" of Grindling to ascertain the bases for his request for replacement counsel. State v. Soares, 81 Hawai'i 332, 355, 916 P.2d 1233, 1256 (App. 1996). Also, before discharging Virtue and requiring Grindling to proceed to trial without representation, the court should have advised Grindling that the court was not required to appoint substitute counsel to represent Grindling if the court were to discharge Virtue. Id.

(ii) Nevertheless, the errors were harmless beyond a reasonable doubt because Grindling was without counsel for only roughly one week, about four months before trial began. Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 245, 953 P.2d 1315, 1343 (1998) ("A constitutional error is harmless as long as the court is able to declare a belief that it was harmless beyond a reasonable doubt."). Grindling does not explain and we fail to see how he was prejudiced by his lack of representation for that time.

(iii) The court did not find that Grindling had elected to represent himself based on his conduct.

(iv) Grindling's waiver of his right to counsel appeared to be equivocal because although he moved to waive his right to counsel, he really wanted substitute counsel.

(b) With regard to the court's discharge of Songstad, there was no gap between the time that Songstad withdrew from representing Grindling and Cynthia A. Kagiwada (Kagiwada) replaced Songstad. Grindling does not dispute that he wanted the court to discharge Songstad, and Grindling did not contest subsequent Kagiwada's representation of him. Therefore,

4

we fail to see how Grindling could have been prejudiced by any error on the part of the court when the court replaced Songstad with Kagiwada, and we hold that any such error was harmless. HRPP Rule 52(a); Korean Buddhist Dae Won Sa Temple of Hawaii, 87 Hawai'i at 245, 953 P.2d at 1343.

(3)  The circuit court did not abuse its discretion by denying Grindling's Motion to Quash and Motions to Suppress.

(a)  The court found that Grindling's testimony lacked credibility and did not prove that Officer Esperanza's affidavit contained false or misleading information.  We decline to review this credibility determination.  See State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.").

(b)  Under State v. Detroy, 102 Hawai'i 13, 18-20, 72 P.3d 485, 490-92 (2003), there was no requirement that Officer Esperanza provide corroborating evidence for assertions he made in Paragraph 20 of his affidavit.  We find no authority for Grindling's assertion that the officer was required to provide such corroboration.

(c)  The court did not improperly deprive Grindling of his right to cross-examine Officer Esperanza regarding the officer's statement in his affidavit that Grindling had a prior narcotics arrest and conviction.  Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978), which Grindling cites to in support of this argument, is inapposite because here, the court found that Grindling did not make a substantial preliminary showing that Officer Esperanza made a false statement in his affidavit.

(d)  Officer Esperanza's affidavit, attached as Exhibit A to the State's opposition memorandum to the Motions to Suppress, was sufficient, even though Officer Esperanza did not state that he actually observed contraband within the Awakea house.  In his affidavit, Officer Esperanza provided some of the

5

underlying circumstances from which the CI concluded the narcotics were where the CI claimed they were and some of the underlying circumstances from which Officer Esperanza concluded the CI was credible and the CI's information was reliable. Detroy, 102 Hawai'i at 18-19, 72 P.3d at 490-91 (holding that when a police officer relies on anonymous tip to establish probable cause for issuance of search warrant, the officer, in his search warrant affidavit, must fulfill the two-prong test set out in Aguilar v. Texas, 378 U.S. 108, 114, 84 S. Ct. 1509, 1514 (1964)); see also State v. Kanda, 63 Hawai'i 36, 42, 620 P.2d 1072, 1076 (1980) (holding that in a search warrant affidavit, affiant must reveal adequate basis for informer's conclusion regarding location of objects sought to be recovered and must demonstrate that affiant's trust in informer's credibility was warranted).

(4) The circuit court did not err in failing to compel the State to reveal the identity of its CI. State v. Rodrigues, 88 Hawai'i 363, 364, 966 P.2d 1089, 1090 (1998), is distinguishable because Grindling did not file a motion to compel the State to reveal the CI's identity, the CI was not present at the raid, and the State did not plan to call the CI to testify at trial. Id. at 367-68, 966 P.2d at 1093-94.

(5) The circuit court did not abuse its discretion by denying Grindling's Motions to Compel. HRPP Rule 16.

(a) We do not see in the record on appeal where Grindling moved the court to compel the State to produce Maui Police Department (MPD) sign-out logs for money to conduct drug buys, and consider this argument waived. See State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) (holding that "if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal").

(b) The court did not abuse its discretion by refusing to compel the State to produce Grindling and Officer Esperanza's respective cell phone location records or Officer Esperanza's cell phone bill because the court did not find

credible Grindling's theory that the evidence would prove the officer had lied when he stated in his affidavit that the drug buy occurred, and we decline to review that credibility determination. Mattiello, 90 Hawai'i at 259, 978 P.2d at 697.

(c) Even if the court erred by not compelling the State to produce MPD mileage logs of undercover vehicles, in light of the entire proceedings and giving the error the effect to which the whole record shows it is entitled, State v. Sprattling, 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002), there was no reasonable possibility that the error might have contributed to the conviction. State v. Pauline, 100 Hawai'i 356, 378, 60 P.3d 306, 328 (2002). Even if such vehicle mileage logs revealed that Officer Esperanza or other MPD officers drove different distances on the date of the drug buy and date of the raid respectively, such evidence would not necessarily prove that the drug buy did not occur.

(6) The circuit court did not err by failing to find that the State lost or destroyed Grindling's cell phone records. Grindling acknowledged that such records were not in the State's control and is estopped from now claiming otherwise. See Roxas v. Marcos, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (internal quotation marks and citation omitted) (holding that the doctrine of judicial estoppel "prevents parties from playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation").

(7) The circuit court gave Grindling the pretrial advisement regarding his right to testify required by State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000), and obtained on the record Grindling's waiver of his right to testify. Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995).

(8) The circuit court did not abuse its discretion by denying Grindling's motion for mistrial, given the speculative nature of Grindling's assertion that jurors in this case witnessed him in shackles. State v. Samonte, 83 Hawai'i 507,

523, 928 P.2d 1, 17 (1996) (holding that if a court does not determine that an outside influence on a jury rises to the level of being substantially prejudicial, the trial court is under no duty to interrogate the jury); State v. Morishige, 65 Haw. 354, 362, 652 P.2d 1119, 1126 (1982) (internal quotation marks and citation omitted) (holding that the jury's viewing of defendant in shackles "does not, ipso facto, raise a presumption of prejudice").

(9) The circuit court did not err by denying Grindling's JOA Motion because circumstantial evidence adduced at trial provided sufficient evidence to support a finding of constructive possession beyond a reasonable doubt. State v. Mundell, 8 Haw. App. 610, 615-16, 822 P.2d 23, 26 (1991) ("A person who . . . knowingly has both the power and the intention, at a given time, to exercise dominion over a thing, either directly or through another person or persons, is then in constructive possession of it."); State v. Moniz, 92 Hawai'i 472, 476, 992 P.2d 741, 745 (App. 1999) (internal quotation marks and citation omitted) ("To support a finding of constructive possession the evidence must show a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug."); HRS §§ 329-43.5(a) and 712-1243.

(10) The circuit court did not abuse its discretion in sentencing Grindling to consecutive terms of imprisonment and not probation.

(a) For a defendant to be eligible for probation under HRS § 706-622.5 (Supp. 2008), the court must first determine the defendant is non-violent after reviewing the defendant's criminal history and other relevant information. In the instant case, the court found Grindling not an appropriate candidate for probation because of his past misconduct and behavior. Gindling had a previous conviction for Terroristic Threatening in the First Degree. The court concluded that incarceration of Grindling was necessary to protect the public.

(b)   The court was within its discretion in finding that regardless of what any substance abuse assessment or proposed substance abuse plan stated with regard to the potential effectiveness of rehabilitation, the factors enumerated in HRS §§ 706-606 (1993) and 706-621 (1993) weighed in favor of sentencing Grindling to imprisonment rather than probation.  HRS §§ 706-605 (Supp. 2009), 706-606, 706-621, 706-622.5 & cmt.; State v. Gaylord, 78 Hawai'i 127, 150, 890 P.2d 1167, 1190 (1995) (holding that sentencing courts are to implement HRS § 706-606 from the perspective that the general sentencing scheme set out in HRS Chapter 706 emphasizes deterrence and just punishment); State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994) ("A sentencing court exercises a broad discretion in deciding whether to impose a prison term.").

(c)   The court did not plainly and manifestly abuse its discretion by imposing consecutive sentences of imprisonment upon Grindling even though the court did not specifically state that it was imposing such sentences to achieve retributive, incapacitative, and deterrent objectives.  We find no authority -- including Gaylord, which Grindling cites to in support of this point -- for the notion that the court was required to specifically state it was fulfilling such objectives in imposing its sentences.

(d)   We find no authority in this jurisdiction for Grindling's claim that his sentence "shocks the conscience."

(11) The circuit court did not err by denying Grindling's Petition for DNA Test because no reasonable probability exists that Grindling would have escaped prosecution or conviction if exculpatory results had been obtained through DNA analysis of the glass pipe.  Because the State showed that Grindling constructively possessed the pipe, any absence of Grindling's DNA on it would be of little consequence.  HRS §§ 329-43.5(a), 712-1243(1), 844D-121 (Supp. 2009), and 844D-123 (Supp. 2009).

(12) The State did not commit prosecutorial misconduct.

(a) The State did not impermissibly disclose a confidential plea agreement between Grindling and the State when the State attached to its opposition to the Motions to Compel a letter from Grindling, in which Grindling threatened to expose the identity of the CI if the case was not dismissed. The letter was not related to any plea discussion.

(b) Grindling is estopped from arguing that the State impermissibly failed to produce the chain of custody because at trial on August 5, 2008, Songstad stipulated to the chain of custody in this case. Roxas, 89 Hawai'i at 124, 969 P.2d at 1242.

(c) Grindling does not explain how he was prejudiced by the State's reference to a letter from Grindling to Richard Gronna (Gronna) in which Grindling stated to Gronna, "If I see you on Maui, I will kill you" and "F-you, punk!", and we do not see how it prejudiced Grindling. Regardless, the circuit court was made aware of the letter when Gronna submitted a copy of it to the court at a hearing on June 30, 2008 in connection with Grindling's motion to discharge Gronna as his counsel. The State did not commit prosecutorial misconduct by making reference to the letter.

(d) The State did not impermissibly refuse to produce fingerprint evidence collected from a glass pipe found on the bedroom floor during the drug raid because, according to the record on appeal, the State did not collect such evidence.

(e) The State did not commit prosecutorial misconduct in its closing argument. See State v. Hauge, 103 Hawai'i 38, 56, 79 P.3d 131, 149 (2003) ("[I]n the absence of improper burden shifting, this court has consistently viewed prosecutorial comment on the state of the evidence as legitimate."). The State did not comment on Grindling's failure to testify or misrepresent the evidence when it referred to Grindling's admissions in its closing argument.

(f)   Given the obscurity of his contentions and record references in his remaining points regarding prosecutorial misconduct, we are unable to address those points.  State v. Adler, 108 Hawai‘i 169, 178, 118 P.3d 652, 661 (2005) (internal quotation marks, citations, and brackets omitted) (holding that "the appellant bears the burden to show error by reference to matters in the record, and this court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions.")

Therefore,

IT IS HEREBY ORDERED that the Judgment, Conviction and Sentence filed in the Circuit Court of the Second Circuit on November 6, 2008 is affirmed.

DATED:  Honolulu, Hawai‘i, March 19, 2010.

On the briefs:

Cynthia A. Kagiwada
on the Opening Brief
for Defendant-Appellant.

Christopher Grindling,
Defendant-Appellant pro se
on the Supplemental Opening
Brief and Reply Brief.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11